<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| MICHAEL BOBBITT, | |
| Plaintiff, | Case No. 2:20-cv-07577 (BRM) (ESK) |
| v. | **OPINION** |
| SIMS METAL MANAGEMENT, | |
| Defendants. | |
| SIMSMETAL EAST LLC d/b/a SIMS METAL MANAGEMENT, | |
| Third-Party Plaintiff, | |
| v. | |
| GENERAL INDUSTRIAL INC. and HOUSTON SPECIAL INSURANCE COMPANY, INC., | |
| Third-Party Defendants. | |

**MARTINOTTI, DISTRICT JUDGE**

Before the Court is Third-Party Defendant General Industrial Inc.'s ("General") Motion for Summary Judgment (ECF No. 57) pursuant to Federal Rule of Civil Procedure 56. Third-Party Plaintiff Sims Metal Management ("Sims") filed an Opposition. (ECF No. 61.) General filed a Reply. (ECF No. 68). Having reviewed the submissions filed in connection with the Motion and having declined to hold oral argument pursuant to Federal Rule of Civil Procedure 78(b), for the reasons set forth below and for good cause having been shown, General's Motion for Summary Judgment is **GRANTED**, in part, and **DENIED**, in part.

# I.   BACKGROUND

Plaintiff Michael Bobbitt ("Plaintiff") was an employee of General at all times relevant to this litigation, including on March 5, 2019, when he sustained a slip and fall injury at Sims's Jersey City, New Jersey Property located at 1 Linden Avenue, Jersey City, New Jersey (the "Property"). (ECF No. 57-5 ¶¶ 1–2.) Sims is a New Jersey corporation, which owned, leased, and/or operated the Property. (ECF No. 1 ¶¶ 3–4.) General is a Pennsylvania corporation, which entered into an agreement (the "Agreement") with Sims, whereby General agreed to furnish "certain services, labor, materials and/or equipment at [Sims's] various facilities," including at the Jersey City Property. (ECF No. 57-5 ¶ 3.)

## A.   The Agreement

The Agreement defined General's scope of work and applied the definition "to any and all purchase orders, work orders and any other work or service (the "Work") furnished by [General] from and after the date of th[e] Agreement." (*Id.* ¶ 4; ECF No. 57-6). General was to "perform the Work at its own risk and expense and only as authorized by [Sims] in accordance with its policies and procedures including the furnishing of all materials, labor, supervision, power, tools, equipment and all other items necessary for performance of the Work and compliance with this Agreement." (ECF No. 57-5 ¶ 4.) To the extent the terms of the Agreement conflicted with the terms of a subsequent work order, purchase order or agreement pertaining to Work for Sims, the parties agreed the Agreement's conditions controlled. (*Id.*)

The Agreement contains an indemnity provision, which states:

> To the fullest extent permitted by law, [General] hereby agrees to indemnify and hold [Sims] . . . harmless from any and all claims, suits, demands, charges, liabilities, penalties, losses, costs and expenses including reasonable experts' and attorneys' fees and costs of investigation (the "Losses"), whether or not the acts, errors, omissions or negligence of [Sims] contributed thereto, arising or

2

> allegedly arising, from or out of (a) the work incident to or resulting from any and all operations performed by [General] under or pursuant to any of the provisions of this Agreement, (b) any injury to, or death of, any person or persons including without limitation employees of [General] or any subcontractor, or damage to or destruction of property or the environment, occurring wholly or in part, in connection with or resulting from the Work including without limitation any environmental condition or release of hazardous materials to the environment or by reason of any act, omission or negligence of [General], its employees or any subcontractor . . . . Notwithstanding anything in this paragraph to the contrary, [General] shall not be obligated to indemnify or hold [Sims] harmless for any Losses to the extent caused by [Sims's] active negligence, as such term is defined hereunder. This indemnity shall survive completion of the Work for a period corresponding to the applicable statute of limitations.

(*Id.* ¶ 6; ECF No. 57-6.) The term "active negligence" is defined as the:

> Negligent act or omission of [Sims] agents or employees while they are physically present on the work site and performing [Sims] obligations in connection with the Work, if any, and the claimed loss or damage (i) occurs while such agents or employees are physically present on the work site and (ii) is solely and proximately caused by the negligent performance of such obligations by such agents or employees.

(ECF No. 57-5 ¶ 5; ECF No. 57-6.) Of note, the Agreement also required General to purchase insurance, at General's cost and expense, but for the mutual benefit of General and Sims. (ECF No. 57-5 ¶ 7; ECF No. 57-6.) The Agreement required that General purchase a commercial general liability insurance with coverage limits of not less than $2 million per occurrence and a $5 million aggregate insuring personal injury. (*Id.*)

On August 13, 2018, General submitted a proposal to Sims for work on the Tripping Conveyor Installation project (the "Project") at the Property. (ECF No. 57-5 ¶ 8; ECF No. 57-7.) The scope of work identified in General's proposal included:

> 1.   Furnish labor and equipment including crane service, forklifts and manlifts.

2.  Assemble conveyor components and prepare for erecting including cover rails, drives, idlers, walkway, etc.
3.  Relocate channel conveyor mounting bracket to new locations.
4.  Erect 260' conveyor including tripping assembly and chutes.
5.  Pull conveyor belt and terminate at designated location.

(ECF No. 57-5 ¶ 9; ECF No. 57-7.) Sims accepted General's proposal for the Project. (ECF No. 57-5 ¶ 12.)

Nowhere in the Agreement or General's subsequent proposal did General undertake an obligation to conduct snow and/or ice removal and treatment services. (*Id.* ¶ 11– 12.) Instead, Sims utilized its own employees and equipment for snow and ice removal throughout the Project. (*Id.* ¶ 24.) Sims exclusively and continuously conducted inspections of the grounds following snow and ice conditions, including where Plaintiff fell, and actively prepared its services in advance of storms. (*Id.* ¶¶ 27, 29.) That area, which is between the building and porta-potty, is an "active drive-through area" that Sims "pays close attention to." (*Id.* ¶ 28.) Sims employees, who were present on the Property at all times, would conduct snow and ice removal as necessary, including on the weekend. (*Id.* ¶ 33.) General did not agree to nor undertake a responsibility for removing snow or salting the Property where Plaintiff's injury occurred. (*Id.* ¶¶ 25, 30–31.)

## B.    The Underlying Accident

Prior to the accident, Plaintiff had been working on the Project for approximately eight or nine months. (*Id.* ¶ 13.) During that time, every morning, Plaintiff would drive from his house to General's headquarters in Morrisville, Pennsylvania, drop off his personal car, and drive a company truck to the Sims Property. (ECF No. 61-1 ¶¶ 35–37.) On March 5, 2019, Plaintiff arrived at the Property at around 7:10 A.M. (ECF No. 57-5 ¶ 14.) He was the first worker to arrive at the Property that day. (ECF No. 61-1 ¶ 38.) Within minutes of arriving, Plaintiff parked General's utility truck inside of the warehouse, entered the building, and went to use the porta-potty located

about thirty feet away. (*Id.* ¶ 43.) The accident occurred on Plaintiff's way back to the building

from the porta-potty, about ten or fifteen feet from the door of the building. (*Id.* ¶¶ 45–46.) After

Plaintiff fell, he noticed ice on the ground. (*Id.* ¶ 47.) Plaintiff described the surface area as covered

with "[n]ot much" snow but covered with ice. (ECF No. 57-8 at 28:2-23.) Plaintiff believed the

snow had been pushed before he arrived at the Property. (ECF No. 61-1 ¶ 50.) After his fall, Sims

employees threw rock salt over the area. (ECF No. 68 at ¶ 51.) Plaintiff subsequently filed a

workers' compensation claim and was awarded $112,000.00. (ECF No. 61-1 ¶ 53.)

### C.     Procedural History

On June 22, 2020, Plaintiff filed a one-count Complaint against Sims, alleging negligence

related to a slip and fall injury sustained on Sims's property. (ECF No. 1.) The Court entered a

default judgment against Sims on January 12, 2021 (ECF No. 18), which was vacated on April 8,

2021 by consent (ECF No. 22). Thereafter, Sims filed an Answer to the Complaint (ECF No. 23)

and a Third-Party Complaint naming Third-Party Defendants General and Houston Specialty

Insurance Company, Inc. ("Houston") (ECF No. 31). Sims's Third-Party Complaint alleges two

causes of action against General, including: (1) contractual indemnification; and (2) breach of

contract.[1] (ECF No. 31.) General filed an Answer to the Third-Party Complaint on October 25,

2021, denying Sims's allegations. (ECF No. 43.)

Sims also tendered the defense of this matter to both General and its insurer, Houston, on

or about May 28, 2021. (ECF No. 61-1 ¶ 54.) By letter dated June 17, 2021, Skyward Underwriters

Agency, Inc. ("Skyward") responded on behalf of Houston. (ECF No. 31 ¶ 29.) Skyward denied

coverage to Sims, claiming Sims was an "additional insured" and coverage as an additional insured

is limited to incidents where acts or omissions of General caused Plaintiff's injury, despite

---

[1] The remaining counts are directed toward Third-Party Defendant Houston.

acknowledging that tender involved both the indemnity and insurance provisions of the Agreement. (*Id.* at Ex. 5.)

General filed this motion for summary judgment on July 8, 2022. (ECF No. 57.) Sims filed an Opposition on August 1, 2022. (ECF No. 61.) The Court administratively terminated the motion pending the outcome of mediation scheduled for September 29, 2022. (ECF No. 63.) On October 4, 2022, the parties advised the Court that the matter could not be resolved at mediation. (ECF No. 65.) Thereafter, the briefing schedule resumed, and General filed a reply on October 31, 2022. (ECF No. 68.)

## II.   LEGAL STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A factual dispute is genuine only if there is "a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party," and it is material only if it has the ability to "affect the outcome of the suit under governing law." *Kaucher v. Cty. of Bucks*, 455 F.3d 418, 423 (3d Cir. 2006); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment. *Anderson*, 477 U.S. at 248. "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson*, 477 U.S. at 255)); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, (1986); *Curley v. Klem*, 298 F.3d 271, 276–77 (3d Cir. 2002). "Summary judgment may not be

granted . . . if there is a disagreement over what inferences can be reasonably drawn from the facts even if the facts are undisputed." *Nathanson v. Med. Coll. of Pa.*, 926 F.2d 1368, 1380 (3rd Cir. 1991) (citing *Gans v. Mundy*, 762 F.2d 338, 340 (3d Cir.), *cert. denied*, 474 U.S. 1010 (1985)); *Ideal Dairy Farms, Inc. v. John Labatt, Ltd.*, 90 F.3d 737, 744 (3d Cir. 1996).

The party moving for summary judgment has the initial burden of showing the basis for its motion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party bears the burden of persuasion at trial, summary judgment is appropriate only if the evidence is not susceptible to different interpretations or inferences by the trier of fact. *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999). On the other hand, if the burden of persuasion at trial would be on the nonmoving party, the party moving for summary judgment may satisfy Rule 56's burden of production by either (1) "submit[ting] affirmative evidence that negates an essential element of the nonmoving party's claim" or (2) demonstrating "that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim." *Celotex*, 477 U.S. at 330 (Brennan, J., dissenting). Once the movant adequately supports its motion pursuant to Rule 56(c), the burden shifts to the nonmoving party to "go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Id.* at 324; *see also Matsushita*, 475 U.S. at 586; *Ridgewood Bd. of Ed. v. Stokley*, 172 F.3d 238, 252 (3d Cir. 1999). In deciding the merits of a party's motion for summary judgment, the court's role is not to evaluate the evidence and decide the truth of the matter, but to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249. Credibility determinations are the province of the factfinder. *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992).

There can be "no genuine issue as to any material fact," however, if a party fails "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322–23. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 323; *Katz v. Aetna Cas. & Sur. Co.*, 972 F.2d 53, 55 (3d Cir. 1992). A "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A material fact raises a "genuine" dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Williams v. Borough of W. Chester*, 891 F.2d 458, 459 (3d Cir. 1989) (quoting *Anderson*, 477 U.S. at 248).

"In evaluating the evidence, the Court must consider all facts and their logical inferences in the light most favorable to the non-moving party." *Rhodes v. Marix Servicing, LLC*, 302 F. Supp. 3d 656, 661 (D.N.J. 2018) (citing *Curley v. Klem*, 298 F.3d 271, 276–77 (3d Cir. 2002)). "While the moving party bears the initial burden of proving an absence of a genuine dispute of material fact, meeting this obligation shifts the burden to the non-moving party to 'set forth specific facts showing that there is a genuine [dispute] for trial.'" *Id.* (quoting *Anderson*, 477 U.S. at 250).

"Unsupported allegations, subjective beliefs, or argument alone . . . cannot forestall summary judgment." *Read v. Profeta*, 397 F. Supp. 3d 597, 625 (D.N.J. 2019). "Thus, if the nonmoving party fails 'to make a showing sufficient to establish the existence of an element essential to that party's case, . . . there can be no genuine issue of material fact.'" *Id.* (quoting *Katz v. Aetna Cas. & Sur. Co.*, 972 F.2d 53, 55 (3d Cir. 1992) (quotation marks omitted)). "In

considering the motion, the Court 'does not resolve factual disputes or make credibility determinations.'" *Rhodes*, 302 F. Supp. 3d at 661 (quoting S*iegel Transfer, Inc. v. Carrier Express, Inc.*, 54 F.3d 1125, 1127 (3d Cir. 1995)).

## III. DECISION

General moves for summary judgment arguing: (1) the choice of law provision in the Agreement does not necessitate a choice of law analysis[2]; (2) the contractual indemnification provision in the Agreement is not triggered where the claim resulted outside the scope of work and at Sims's active negligence; and (3) the breach of contract claim fails on its face. (ECF No. 57-2 at 17–26.) In opposition, Sims argues: (1) New York law holds that the phrase "any and all" binds the indemnitor to indemnify the indemnitee for the latter's own negligence; (2) Plaintiff's injury arose out of his work at the site; (3) New Jersey and Pennsylvania law[3] mandates workers' compensation benefits are only available when an injury is caused to an employee by an accident arising out of and in the course of his employment; (4) there can be no "active negligence"; and (5) until Plaintiff is exonerated of any comparative negligence, General's motion is premature. (ECF No. 61 at 7-21.) General responds: (1) Sims's application of New York law fails to

---

[2] The Agreement's choice of law provision designates New York law as the law applicable to its interpretation. This Court "will enforce the terms of a contract that is unambiguous on its face." *Brauser Real Estate, LLC v. Meecorp Cap. Mkts., LLC*, No. 06-01816, 2008 WL 324402 at *3 (D.N.J. Feb. 4, 2008) (citation omitted). Indeed, "courts in [the Third Circuit] have repeatedly honored choice-of-law provisions that explicitly state a particular governing law." *Id.* (citing *Allegheny Energy, Inc. v. DQE, Inc*., 171 F.3d 153, 159 (3d Cir. 1999)). Where the provision's language is plain, and the parties' intention is clear and unambiguous, courts will honor the parties' contractual choice of law. *See Brauser Real Estate*, 2008 WL 324402 at *3 (citing *Allegheny Energy*, 171 F.3d at 159). Applying these principles, the Court finds that New York law governs the contractual analysis herein. The parties do not dispute its application.

[3] While New York law applies to this Court's analysis, both parties make reference to New Jersey law, which is the law of the forum state, and Pennsylvania law, which is the law that governed Plaintiff's workers' compensation claim, to further support their positions.

contemplate the clear exception to the indemnification provision regarding Sims's active negligence; (2) the contractual indemnification obligation is not triggered where Plaintiff's injury occurred outside the "scope of work" and was caused by Sims's "active negligence"; (3) Sims's argument that Plaintiff's injury arose out of his work on the site and within the course of employment is immaterial to the indemnification provision of the agreement; and (4) employers are not subject to third-party claims pursuant to the Comparative Negligence Act, N.J.S.A. 2A:15-5.3. (ECF No. 68-1 at 4–19.) The parties' arguments are addressed in turn below.

### A.    Indemnification Claim

General argues the contractual indemnification provision in the Agreement is not triggered where the claim arose outside the scope of work and at Sims's active negligence. (ECF No. 57-2 at 21–26.) Specifically, General submits they are only obligated to indemnify Sims where the subject injury results from work performed in accordance with the Agreement. (*Id.*) General contends Plaintiff's injury occurred outside the scope of work contemplated in the Proposal because: (1) General, and Plaintiff, had not begun work at Sims's Property that morning; (2) General was not obligated to perform work outside of the building where Plaintiff's injury occurred; and (3) General's work did not include snow and ice removal services. (*Id.*) Further, General argues the Agreement's active negligence provision precludes indemnification because Sims was present on the scene at the time of the accident; the injury occurred outside Plaintiff's scope of work; and it was Sims's sole obligation to conduct snow and ice removal services on the Property. (*Id.*)

Sims responds that under New York law, interpretation of an "any and all" term in an indemnification provision necessarily binds the indemnitor to indemnify the indemnitee for the latter's own negligence (ECF No. 61 at 7–10), and here, Plaintiff's injury "ar[ose] out of" his work

at the site, requiring indemnification (*id.* at 11–13). Sims argues their position is supported by Plaintiff's receipt of workers' compensation benefits in Pennsylvania, which requires that injury occur "in the course of employment." (*Id.* at 13–14.) Sims also submits, by General's own admission, there can be no active negligence, because they admit no "work" was ongoing at the time of Plaintiff's fall. (*Id.* at 14–17.) Lastly, Sims submits General's motion is premature because Plaintiff has not been exonerated of any comparative negligence. (*Id.* at 17–20.)

In reply, General argues Sims's application of New York law fails to contemplate the clear active negligence exception to this indemnification provision; the contractual indemnification obligation is not triggered where Plaintiff's injury occurred outside the scope of work and caused by Sims's active negligence; Sim's argument that Plaintiff's injury arose within the course of employment is immaterial to the indemnification provision of the Agreement because employment does not equal work; and employers are not subject to third-party claims pursuant to the Comparative Negligence Act. (ECF No. 68-1 at 4–19.)

Under New York law, courts consistently enforce indemnification provisions where "such intention is expressed in unequivocal terms" or if it "appears to have been the unmistakable intent of the parties." *In re New York City Asbestos Litig.*, 41 A.D.3d 299, 301 (N.Y. App. Div. June 26, 2007) (citations omitted). Broad indemnification provisions "purporting to apply to 'any and all' liability' should be construed as meaning what they say, by allowing them to cover 'any and all' liability on the part of the person being indemnified." *Id.* (citing *Levine v. Shell Oil Co.*, 269 N.E.2d 799, 802 (N.Y. 1971)). Where the indemnity provision carves out an exception to the agreement, including limiting the relief to a party's "active negligence," the provision "must clearly be

understood to mean that . . . where the liability is *not* the result of the *sole active negligence* . . . , the indemnification provision remains applicable." *Id.* at 302.

General agreed to indemnify and hold harmless Sims for "any and all claims, suits, demands, charges, liabilities, penalties, losses, costs and expenses" regardless of "whether or not the acts, errors, omissions or negligence of [Sims] contributed thereto" if they arise "from or out of (a) the work incident to or resulting from any and all operations performed by [General]" or "any injury to . . . employees of [General] . . . occurring wholly or in part, in connection with or resulting from the Work." (ECF No. 57-6 ¶ 8.) The Agreement further states, "Notwithstanding anything in this paragraph to the contrary, [General] shall not be obligated to indemnify or hold [Sims] harmless for any Losses to the extent caused by [Sims's] active negligence . . . ." (*Id.*) Based on the Agreement's plain language, General is responsible for any and all liability incurred by Sims, whether General has been negligent or not, so long as the subject claim is incident to, resulting from, or otherwise connected with Plaintiff's work, and providing the loss was not caused by Sims's own active negligence, defined therein. *See Brown v. Two Exchange Plaza Partners*, 556 N.E.2d 430, 433 (N.Y. 1990).

       1.     Scope of Work

General argues Plaintiff's injury occurred outside the scope of work as contemplated by the Agreement and Proposal because: (1) General had not begun working, as defined in the Proposal, at the Property at the time Plaintiff arrived; (2) General was not responsible for performing work outside of the building where the accident occurred; and (3) General was not responsible for snow or ice removal. (ECF No. 57-2 at 22-23.) Accordingly, General contends Plaintiff's injury does not trigger the indemnification provision. (*Id.*) Sims disagrees, arguing Plaintiff's claim is an injury to an employee of General, incident to operations performed by

General, and therefore, triggers the indemnification provision of the agreement. (ECF No. 61 at 10.) General responds that Plaintiff's injury did not arise out of operations performed pursuant to any provision of the Agreement or performance of actual "work," and therefore, the contractual provision for indemnification has not been met. (ECF No. 68-1 at 8–11.)

The parties contracted for General to provide "certain services, labor, materials and/or equipment at [Sims'] various facilities" subject to the terms and conditions of the Agreement and any and all purchase orders, work orders, and other work or service provided after the date of the Agreement. (ECF No. 57-5 ¶ 4; ECF No. 57-6 ¶ 1.) Specifically, General's obligations with relation to the Project included that they:

1. Furnish labor and equipment including crane service, forklifts and manlifts.
2. Assemble conveyor components and prepare for erecting including cover rails, drives, idlers, walkway, etc.
3. Relocate channel conveyor mounting bracket to new locations.
4. Erect 260' conveyor including tripping assembly and chutes.
5. Pull conveyor belt and terminate at designated location.

(ECF No. 57-5 ¶ 9; ECF No. 57-7.)

General agreed to indemnify Sims for losses "arising or allegedly arising, from or out of" the Work incident to the operations of General pursuant to the agreement, or any injury to an employee that occurred in connection with or resulting from the Work. The phrase "arising out of," as used here, has been interpreted by New York courts to mean "originating from, incident to, or having connection with" and requires "only that there be some causal relationship between the injury and the risk for which coverage is provided." *Worth Constr. Co., Inc. v. Admiral Ins. Co.*, 888 N.E.2d 1043 (N.Y. 2008) (quoting *Maroney v. New York Cent. Mut. Fire Ins. Co.*, 839 N.E.2d 886 (N.Y. 2005)). The focus of a clause limiting liability to that "arising out of" specific operations "is not on the precise cause of the accident but the general nature of the operation in the course of

13

which the injury was sustained." *Id.* (quoting *Impulse Enters./F&V Mech. Plumbing & Heating v. St. Paul Fire & Mar. Ins. Co.*, 282 A.D.2d 266, 267 (N.Y. App. Div. Apr. 12, 2001)).

In *Chelsea Assocs. LLC v. Laquila-Pinnacle*, a general contractor, Turner Construction Company ("Turner") contracted with a defendant-subcontractor, Laquila-Pinnacle ("LP"). 21 A.D.3d 739, 740 (N.Y. App. Div. Sept. 8, 2005). In an agreement between the two, LP agreed to indemnify and hold harmless Turner for all claims of bodily injury, regardless of any negligence on Turner's part. *Id.* Thereafter, one of LP's employees, Vincent Langella ("Langella"), was injured on his way to work when he tripped on plywood used as a temporary ramp near the entrance of the job site. *Id.* In the resulting action, the Court found LP's insurance carrier was legally obligated to defend and indemnify Turner for Lagnella's injury that occurred "en route to his work assignment," finding Lagnella was injured while working for the purpose of interpreting the indemnification provision. *Id.* The Court reasoned, the "contract could not be performed, of course, unless [LP's] employees could reach and leave their workplaces on the jobsite, and therefore the instant injuries occurring during such a movement, must be deemed as a matter of law to have arisen out of the work." *Id.* at 740–41 (internal quotations omitted); *see also Longwood Cent. School Dist. v. Am. Employers Ins. Co.*, 35 A.D.3d 550, 551-52 (N.Y. App. Div. Dec. 12, 2006) (citations omitted) ("The only restriction contained in the additional insured clause of the subject policy was that the accident must arise out of [the defendant's] work. Because [defendant's employee's] accident occurred as he was traversing the parking lot to inspect the frozen pipe, his accident arose out of [the defendant's] work.").

Further, in *Turner Constr. Co. v. Pace Plumbing Corp.*, an employee of the subcontractor-defendant was injured on a project, for which Turner Construction Company ("Turner") was the general contractor, when he slipped and fell on the floor of the construction site bathroom. 298

14

A.D.2d 146, 146 (N.Y. App. Div. Oct. 3, 2002). Turner sought reimbursement of defense costs and indemnity pursuant to an agreement between Turner and the subcontractor, Pace Plumbing Corp. ("Pace"). *Id.* The Court found Pace's insurance carrier was obligated to indemnify Turner. *Id.* at 146–47. The relevant question before the Court was whether the employee's injury arose in connection with the execution of Pace's work, and therefore, whether Turner was entitled to indemnification under the policy. *Id.* The Court found "the injured employee's use of bathroom facilities located at the job site was a necessary and unavoidable activity that arose in the course of the construction project" and therefore, answered the question in the affirmative. *Id.* at 147.

Here, the parties do not dispute that Plaintiff arrived at the Property in connection with his employment, exited his company's vehicle, and within minutes, proceeded to an outdoor porta-potty before he slipped and fell on snow or ice. Those facts alone, however, are insufficient to establish judgment as a matter of law in favor of General. The Agreement says General will indemnify Sims for losses "*arising or allegedly arising, from or out of* (a) the work *incident to or resulting from* any and all operations performed by [General] . . . [or] (b) any injury to, or death of, any person or persons including without limitation employees of [General] occurring wholly or in part, *in connection with or resulting from* the Work." (ECF No. 57-5 ¶ 6) (emphasis added). Under New York law, it is not necessary for Plaintiff to be injured specifically while performing one of the enumerated functions of General set forth in the Proposal, but instead, that the injury occur incident to or in connection with the general nature of the Work. *See Worth Constr. Co.*, 888 N.E.2d at 1043. Courts have found that plaintiffs who are injured while entering a job site before work and using the bathroom while at work "arise out of" the work for the purposes of indemnification. *See Chelsea Assocs., LLC,* 21 A.D.3d at 740; *Turner Constr. Co.*, 298 A.D.2d at 147. In this case, where Plaintiff picked up his company vehicle, arrived at the job site, and slipped

15

and fell on his way into the building from the porta-potty on the Property, the Court cannot conclusively say, as a matter of law, that Plaintiff's injury did not "aris[e] out of" his work.

        2.   <u>Active Negligence</u>

General argues they cannot be obligated to indemnify Sims for a loss that occurred: (1) when Sims's agents or employees were physically on the work site; (2) in connection with Sims's obligation to remove snow and ice; and (3) after Sims had already undertaken its duty to remove snow and ice from the Property. (ECF No. 57-2 at 23–25.) Therefore, even if the indemnification provision was triggered by Plaintiff's injury, General submits the catch-all active negligence provision precludes Sims's claim for indemnification. (*Id*.) Sims contends the active negligence exception does not apply because Sims was not actively performing its obligations in connection with the Work. (ECF No. 61 at 14–16.) Sims posits there is no proof snow removal operations were ongoing at the time of Plaintiff's fall, and General's position on active negligence is contradictory to its claim that no Work was ongoing at the time of the fall. (*Id*.) General submits in reply that "Active Negligence" is a defined term, which does not require "simultaneous negligence." (ECF No. 68-1 at 13.) Instead, because Sims was physically on the work site, in charge of snow and ice removal, and had already performed snow and ice removal on the morning of the accident, General contends Sims' active negligence alleviates General's indemnification obligations. (*Id*. at 13–14.)

Under the Agreement, General was not responsible for indemnifying Sims on a loss caused by their own active negligence. The term "active negligence" is defined by the Agreement as the:

> Negligent act or omission of [Sims's] agents or employees while they are physically present on the work site and performing [Sims's] obligations in connection with the Work, if any, and the claimed loss or damage (i) occurs while such agents or employees are physically present on the work site and (ii) is solely and proximately caused by

> the negligent performance of such obligations by such agents or
> employees.

(ECF No. 57-5 ¶ 5; ECF No. 57-6.)

"A court must also be careful not to interpret a contracted indemnification provision in a manner that would render it meaningless." *Bradley v. Earl B. Feiden, Inc.*, 864 N.E.2d 600, 605–06 (N.Y. 2007). Instead, "[e]ffect and meaning must be given to every term of the contract . . . , and reasonable effort must be made to harmonize all of its terms." *Corter-Longwell v. Juliano*, 200 A.D.3d 1578, 1583 (N.Y. App. Div. 2021). General argues there is no requirement that Sims's active negligence be performed simultaneously with the injury in order for the active negligence exception to apply. Instead, General argues Sims is responsible for indemnifying General for plaintiff's injury because General has established that Sims had employees at the site at the time of the accident; it was Sims's obligation to remove snow and ice from the premises; and the snow and ice removal was performed by Sims prior to Plaintiff's injury. (ECF No. 68-1 at 13–14.) The Court disagrees.

To interpret the active negligence exception of the Agreement in the manner proposed by General necessarily negates the indemnification provision, which requires Sims to indemnify General from all losses "whether or not the acts, errors, omissions or negligence of [Sims] contributed thereto." (ECF No. 57-5 ¶ 8.) To interpret the active negligence provision in the manner proposed by General, holding Sims liable for active negligence when a plaintiff is injured due to their failure to sufficiently clear snow and ice some time prior to plaintiff's accident, will nullify the indemnification provision therein. Therefore, the Court interprets the active negligence provision contained in the Agreement, as a matter of law, as requiring Sims's active performance of its obligations in connection with the Work. Because General has failed to establish, for the purposes of summary judgment, that Sims was actively performing its snow and ice removal

17

obligations at the time of Plaintiff's injury, the exception is not met under the Agreement. Indeed, there is no proof, and General does not submit, that Sims was performing their snow and ice removal obligations at the time of Plaintiff's fall. In fact, General denies there was any Work ongoing at the time of Plaintiff's accident. Therefore, General's Motion for Summary Judgment as to Sims's Indemnification claim is denied.

### B.    Breach of Contract Claim

General argues Sims's breach of contract claim fails because General purchased insurance through Houston and provided Sims with a certificate of insurance for the period covering Plaintiff's accident; the certificate of insurance named Sims as an additional insured; and the policy provided liability limits of $2 million per occurrence, in comportment with the Agreement. (ECF No. 57-2 at 26–27.) General contends to the extent there is any issue with insurance coverage in this case, the issue is with Houston and not General, because General satisfied its obligations to Sims with respect to the purchase of insurance. (*Id.*) Sims does not address General's argument in their Opposition.

To plead a cause of action for breach of contract, a plaintiff must allege: (1) a contract exists; (2) the plaintiff performed in accordance with the contract; and (3) a defendant breached its contractual obligations. *34-06 73, LLC v. Seneca Ins. Co.*, 198 N.E.3d 1282, 1287 (N.Y. 2022). There is no reasonable dispute here that a contract exists between General and Sims. (*See* ECF No. 57-2 at 26.) As for General's performance, Sims's Third-Party Complaint alleges General breached its obligations under the Agreement because "Houston has denied Sims's claim for

coverage as an additional insured" and therefore "General has breached its contract with Sims by failing to purchase insurance that protects Sims." (ECF No. 31 ¶¶ 37–38.)

General was required "at their sole cost and expense . . . for the mutual benefit of themselves and [Sims]," to "maintain (a) commercial general liability insurance with coverage limits of not less than $2,000,000 per occurrence and a $5,000,000 aggregate insuring personal injury." (ECF No. 57-6 ¶ 9.) The policies were to bear Sims as an additional insured. *Id.* General did, in fact, provide Sims with a certificate of insurance for the period covering Plaintiff's accident, which, as required by the Agreement, named Sims as an additional insured. (ECF No. 31 ¶¶ 12–13.) Because there is no genuine dispute of material fact that General maintained the appropriate insurance in compliance with the Agreement, General's motion for summary judgment is granted as to Sims's breach of contract claim.

## IV.    CONCLUSION

For the reasons set forth above, General's Motion for Summary Judgment (ECF No. 57) is **GRANTED**, in part, and **DENIED**, in part.


*/s/ Brian R. Martinotti*
**HON. BRIAN R. MARTINOTTI**
**UNITED STATES DISTRICT JUDGE**

Dated:  May 24, 2023